**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| ANNA MARIE M.., <br> Plaintiff, <br> vs. <br> COMMISSIONER OF SOCIAL SECURITY, <br> Defendant. | Case No.: 4:24-cv-00621-DCN-REP <br> **REPORT AND RECOMMENDATION** |

Pending is Plaintiff Anna Marie M.'s Complaint (Dkt. 1), appealing the Social Security Administration's denial of her disability claim. This action is brought pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The alleged date of onset was July 1, 2016 (later amended to December 10, 2021). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Report and Recommendation.

## I. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the Administrative Law Judge's ("ALJ") findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). If the evidence would reasonably support affirming the ALJ's decision, or reversing it, the Court may not substitute its own judgment for the ALJ's judgment. *Ferguson v. O'Malley,* 95 F.4th 1194, 1199 (9th Cir. 2024).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.* The Court may determine the ALJ's reasoning by drawing reasonable inferences and determining an implied finding from the record. *Ferguson,* 95 F. 4th at 1200.

## II. <u>REPORT</u>

Plaintiff raises two principal challenges to the ALJ's decision. First, she contends that the ALJ's RFC determination is not supported by substantial evidence because the limitations referenced therein are internally inconsistent. Pl.'s Brief at 4-7 (Dkt. 14). Second, Plaintiff argues that the ALJ erred in relying on the testimony of the vocational expert, Kent Granat, concerning the availability of jobs in the national economy at Step Five of the sequential process. *Id*. at 7-9. Each argument is addressed below.

### A. The ALJ's RFC Determination is Not Fatally Inconsistent

Plaintiff first argues that the ALJ's RFC determination is internally inconsistent and therefore unsupported by substantial evidence. *Id*. at 4-7. Specifically, Plaintiff contends that the RFC requires her to use a wheelchair while "moving about," yet simultaneously permits her to "stand or walk for a total of up to two hours in an eight-hour workday," without providing the requisite "logical bridge" explaining how both findings can coexist. *Id*. at 5-6 (citing AR 21). According to Plaintiff, this purported inconsistency undermines both the RFC itself and Mr. Granat's testimony upon which the ALJ relied. *Id*. at 6. Defendant responds that the RFC is not internally inconsistent and, even if it were imprecisely worded, any ambiguity is harmless because Mr. Granat expressly testified that an individual requiring the use of a wheelchair

throughout the day to get around could nevertheless perform the representative occupations identified by the ALJ. Def.'s Brief at 2-4 (Dkt. 16). The undersigned agrees with Defendant.

First, the RFC is not obviously inconsistent. Although the relevant language is not a model of draftsmanship, it does not necessarily describe mutually exclusive limitations. The RFC provides that Plaintiff can "sit without limitation, using a wheelchair while moving about," while also finding that she can "stand or walk for a total of up to two hours in an eight-hour workday." AR 21. Read together, these findings reasonably contemplate an individual who primarily uses a wheelchair for mobility but retains the ability to stand and walk on an occasional basis consistent with sedentary work. That interpretation is neither illogical nor inherently contradictory.

Second, even assuming some ambiguity in the RFC's wording, the administrative hearing dispels any concern that such ambiguity affected the ALJ's disability determination. In posing a hypothetical to the Mr. Granat, the ALJ specifically asked him to assume an individual who "requires the use of a wheelchair throughout the day in order to get around," while otherwise retaining the limitations reflected in the RFC. AR 48-49. Mr. Granat testified that such an individual could nevertheless perform the representative occupations identified at Step Five of the sequential process. *Id*. Thus, even accepting Plaintiff's characterization of the RFC as requiring wheelchair use for mobility, Mr. Granat expressly testified that the identified jobs remained available. Accordingly, none of the asserted inconsistencies would have prevented Plaintiff from performing the occupations upon which the ALJ relied.

Third, Plaintiff's related argument that she could not satisfy the RFC's lifting and carrying requirements because she would necessarily be using her hands to power a wheelchair is also unpersuasive. Pl.'s Brief at 7 (Dkt. 14) ("[H]ow can Plaintiff be expected to "lift and carry" objects when she must use her hands to operate her wheelchair?"). That contention is

speculative and finds no meaningful support in the record. Nothing in the record establishes that the representative occupations require Plaintiff to power a wheelchair while simultaneously lifting or carrying objects, nor does the evidence otherwise demonstrate that the identified jobs are incompatible with the assessed limitations. More importantly, Mr. Granat considered both Plaintiff's need to use a wheelchair and the RFC's lifting and carrying restrictions before identifying the representative occupations. The undersigned declines to substitute Plaintiff's speculation for Mr. Granat's uncontradicted testimony.

For these reasons, Plaintiff has not demonstrated that the RFC contains a reversible internal inconsistency. Rather, Mr. Granat's testimony constitutes substantial evidence supporting both the ALJ's RFC determination and the Step Five finding that Plaintiff could perform work existing in significant numbers in the national economy.

Remand is not warranted on this issue.

**B. The ALJ did Not Err at Step Five of the Sequential Process**

Plaintiff next argues that the ALJ improperly relied on Mr. Granat's testimony concerning the number of jobs available in the national economy. Pl.'s Brief at 7-9 (Dkt. 14). According to Plaintiff, post-hearing SkillTRAN data demonstrates that the representative occupations identified by Mr. Granat exist in far fewer numbers than reflected in his expert testimony, undermining the ALJ's findings at Step Five of the sequential process. *Id*. at 8-9. Defendant responds that Plaintiff forfeited this argument by failing to challenge Mr. Granat's job-number testimony during the administrative hearing and, regardless, that Plaintiff's SkillTRAN submissions are neither significant nor probative under Ninth Circuit precedent. Def.'s Brief at 4-6 (Dkt. 16). Although the undersigned does not agree that Plaintiff forfeited this issue, it nevertheless recommends that remand is unwarranted.

As an initial matter, Defendant's reliance on *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017), in support of its forfeiture argument is somewhat misplaced. In *Shaibi*, the Ninth Circuit held that a represented claimant who neither challenged the vocational expert's job-number testimony before the ALJ nor presented competing evidence to the Appeals Council forfeited the issue on judicial review. *Id*. at 1109-10. Here, however, Plaintiff submitted SkillTRAN evidence to the Appeals Council in support of her request for review. AR 1-6 (incorporating Exhibit 16E into the record); AR 288 (Exhibit 16E stating: "The ALJ erred in relying on flawed testimony of the Vocational Expert where the occupational databases indicate that jobs do not exist in significant numbers."). Thus, unlike the claimant in *Shaibi*, Plaintiff afforded the agency an opportunity to consider her challenge before seeking judicial review. *See Andrick v. Comm'r of Soc. Sec. Admin.*, 669 F. Supp. 3d 819, 824 (D. Ariz. 2023) ("But a claimant who raises the issue with the Appeals Council preserves it – even if she didn't first raise the issue before the ALJ. Because Claimant presented this argument to the Appeals Counsel, she has not waived this argument.") (citing *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017)). Accordingly, the undersigned will address Plaintiff's argument on the merits.

Notwithstanding, Plaintiff has not demonstrated reversible error. An ALJ is required to address rebuttal job-number evidence only when that evidence is "significant and probative." *Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023). In *Wischmann*, the Ninth Circuit explained that printouts generated from SkillTRAN's Job Browser Pro software, accompanied only by counsel's interpretation, were insufficient because they lacked the information necessary to evaluate or compare the data to the vocational expert's testimony. *Id*. at 506-07. Among other deficiencies, the claimant failed to explain the methodology employed, the queries or filters used, the version of the software utilized, or whether anyone with vocational expertise generated

or interpreted the results. *Id*. Consequently, the court concluded that the submissions were not significant or probative evidence requiring further consideration. *Id*. at 507.

Plaintiff's reliance on *Catherine L. v. Kijakazi*, 2023 WL 3318148 (D. Or. 2023), does not compel a different conclusion. Pl.'s Reply at 2-3 (Dkt. 17). There, relying on *White v. Kijakazi*, 44 F.4th 828 (9th Cir. 2022), the court observed that vocational experts often use SkillTRAN because it is a reliable source of job-number estimates. *Catherine L.*, 2023 WL 3318148 at *6. But those cases involved circumstances where the competing job-number evidence was generated from the same source or methodology as the vocational expert's testimony, making the comparison a meaningful one. *Id.; see also White*, 44 F.4th at 832.

That showing is absent here. Unlike *Catherine L.* and *White*, Mr. Granat never testified that his job-number estimates were derived from SkillTRAN. Rather, when asked by the ALJ whether his testimony was consistent with the Dictionary of Occupational Titles and its accompanying publications, he answered that it was. AR 49. Nothing in the administrative record indicates that Mr. Granat relied upon SkillTRAN in arriving at his job-number estimates or otherwise employed the same methodology reflected in Plaintiff's post-hearing submissions. Thus, the undersigned cannot conclude that Plaintiff's SkillTRAN evidence represents an apples-to-apples comparison with the vocational expert testimony.

Nor has Plaintiff separately supplied the information necessary to render the SkillTRAN evidence significant and probative. There is no meaningful explanation regarding how the SkillTRAN data was generated, what version of the software was used, what queries or filters were applied, or whether the results were prepared or interpreted by an individual possessing vocational expertise. Instead, the Court is left only with counsel's unsupported interpretation of raw SkillTRAN data. As the Ninth Circuit has observed, such evidence is insufficient because it provides neither the context nor the methodology necessary for a reviewing court to

meaningfully compare the data with the vocational expert's testimony. *Wischmann*, 68 F.4th at 506-07; *see also Laura Sue W. v. Comm'r of Soc. Sec. Admin.*, 2025 WL 2944378, at *9 (D. Idaho 2025) ("Such bare unsupported assertions are insufficient to contradict the VE's testimony or give rise to an evidentiary inconsistency that the ALJ was required to resolve. Simply put, Plaintiff's submissions are not significant probative evidence of any inconsistency with the VE's testimony necessitating remand.").

Without that foundation – and without any separate showing that the competing job numbers were generated using the same methodology as Mr. Grant's testimony – Plaintiff has not demonstrated the type of evidentiary inconsistency that required further consideration by the ALJ. At bottom, Mr. Granat's testimony concerning the availability of jobs in the national economy amounted to substantial evidence upon which the ALJ was entitled to rely at step five of the sequential process. *See Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022) (citing *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020)).

Remand is not warranted on this issue either.

## III. <u>RECOMMENDATION</u>

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be AFFIRMED, that Plaintiff's Complaint (Dkt. 1) be DENIED, and this action be DISMISSED in its entirety, with prejudice.

///

///

///

///

///

///

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty (20) pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to exceed twenty (20) pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: August 13, 2026

____________________________
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge